**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

ANTONIO MCKINLEY,

      Plaintiff,

      v.

CITY OF CHICAGO, a municipal
corporation, and Chicago Police Officers
FRANCISCO MORADO and ANTONIO
OCAMPO,

      Defendants,

Case No. 24-cv-3465

*Jury demanded.*

---

**COMPLAINT AT LAW**

---

NOW COMES Plaintiff ANTONIO MCKINLEY, by his attorney, LAW OFFICE OF

JORDAN MARSH LLC, and complaining of the defendants, CITY OF CHICAGO, a municipal

corporation, and Chicago Police Officers FRANCISCO MORADO and ANTONIO OCAMPO,

and states the following:

**JURISDICTION AND VENUE**

1. This action arises under the Constitution of the United States, particularly the

Eighth and Fourteenth Amendments to the Constitution of the United States, under the laws of

the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections

1983 and 1988, and under the laws of the State of Illinois.

1

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the Federal claims. Venue is proper under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

**PARTIES**

4. At all times relevant herein, Plaintiff ANTONIO MCKINLEY ("Antonio") was a resident of the County of Cook, State of Illinois.

5. Defendant, CITY OF CHICAGO is a government entity operating within the State of Illinois. The CITY OF CHICAGO is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, CITY OF CHICAGO was the employer of Defendants MORADO and OCAMPO.

6. Defendant MORADO is sued in his individual capacity and was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

7. Defendant OCAMPO is sued in his individual capacity and was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the

scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

## **FACTUAL ALLEGATIONS**

8.     On January 21, 2023, at or around 12:37 p.m., Antonio was walking on the 800 block of North Ridgeway Avenue, in Chicago.

9.     Antonio was passing by an abandoned house when a police car pulled up near him.

10.     Defendants Morado and Ocampo proceeded to arrest Antonio for allegedly engaging in hand-to-hand drug transactions.

11.     When the officers searched Antonio, they found no drugs.

12.     Antonio denied having anything to do with the drugs.

13.     Antonio was not, in fact, engaging in any hand-to-hand drug transactions, or any other type of drug transactions on January 21, 2023.

14.     After his arrest, Antonio was detained at the 11th District lockup until the morning of January 22, 2023, when he was transported to Cook County jail.

15.     Antonio was detained at Cook County Jail until February 5, 2023, when he was released under house arrest.

16.     Antonio was under house arrest until February 17, 2023.

17.     Antonio was charged with manufacture and/or delivery of Fentanyl, a Class X Felony, and possession of 15+ grams of Heroin, a Class 1 felony.

18.     Before his trial, the prosecution offered Antonio a deal: if Antonio agreed to plead guilty to the heroin charge, the State would dismiss the fentanyl charge, and Antonio would get two years' probation on the heroin charge, with no jail time.

19. The judge explained to Antonio that if he declined the offer and was found guilty on the fentanyl charge, he would not be eligible for probation on that charge and could be sentenced to 6 to 30 years in prison, or 30 to 60 years if he was eligible for an extended term based on his criminal background.

20. The judge explained that if Antonio was found guilty on the heroin charge, he could receive 48 months of probation, or he could be sentenced to 4 to 15 years in prison, or 15 to 30 years in prison if he was eligible for an extended term based on his criminal background.

21. Despite the enormous risks involved, Antonio – knowing he was innocent – declined the offer and chose to fight the charges.

22. During the preliminary hearing on March 13, 2023, Defendant Ocampo testified that he and his partner, Defendant Morado, observed Antonio yelling "blows, blows" on the public way to pedestrians.

23. Asked if he continued surveillance based on what he saw, Ocampo said yes.

24. Ocampo testified as follows:

> On three separate occasions, I saw the offender speak with three unknown males, brief conversation, then he would go to the rear [of] 836 North Ridgeway to an abandoned vehicle, open the rear driver's side door and retrieve some … small white Ziploc bags containing white powder substance. Then he would go back to the front of the house [at] 836 North Ridgeway and tender small unknown suspect narcotics for USC [United States Currency].

25. Ocampo testified he was surveilling Antonio for "[p]robably 30 minutes."

26. Defendant officers arrested Antonio at 12:37 p.m.

4

27. Officers Ocampo and Morado were at a street stop on Lake Street and Central Park Avenue before they went to the 800 block of Ridgeway.

28. During the stop on Lake and Central Park, they detained a suspect, handcuffed him, and placed him in their squad car.

29. Defendant Morado's bodycamera was turned off at 12:18 p.m. while a suspect was still in his vehicle.

30. Lake Street and Central Park Avenue is a 5-minute drive from 836 N. Ridgeway.

31. On February 27, 2024, Defendant Morado testified that he alone observed Antonio engaging in hand-to-hand drug transactions.

32. Morado testified as follows:

   a. Defendant Ocampo dropped him off in an alley at the rear of an abandoned building at 836 N. Ridgeway before driving and parking a couple of blocks away.

   b. Morado entered the building through the rear using a personal ladder.

   c. He entered the second floor of the building.

   d. He was in full police uniform.

   e. He (Morado) conducted surveillance of Antonio for about 20 minutes from the second floor of 836 N. Ridgeway before he arrested Antonio.

   f. Morado observed Antonio pace back and forth along the entire block, yelling, "Blows, Blows", soliciting passersby in vehicles.

   g. He observed Antonio engage in three separate hand-to-hand transactions where he would exchange suspect narcotics for money.

   h. Morado observed Antonio going to a car at the rear of the building on numerous occasions, where he recovered Ziploc baggies containing suspect narcotics.

i. Morado then radioed Ocampo to come pick him up.

j. Morado exited the rear of the building on his personal ladder. Ocampo picked him up in the alley.

k. Morado wasn't sure if he and Ocampo went right to the front of Ridgeway or went a couple blocks before apprehending Antonio.

l. Morado and Ocampo apprehended Antonio within a couple minutes after Ocampo picked up Morado in the alley.

m. Both Morado and Ocampo were equipped with body worn cameras at that time.

n. Despite being equipped with a body worn camera, Morado never activated it until after he and Ocampo had apprehended Antonio.

o. Neither Morado nor Ocampo had a search warrant or an arrest warrant for Antonio.

p. Morado had never used the building at 836 N. Ridgeway before as a surveillance location.

33. Defendant Ocampo also testified on February 27th, 2024.

34. Contrary to his prior testimony, in which he testified that he personally observed Antonio walk down the block yelling "blows, blows", and that he personally observed Antonio engage in hand-to-hand transactions with three different individuals, Ocampo testified that he never laid eyes on Antonio until he and Morado detained Antonio.

35. Ocampo testified that he was not located at 836 N. Ridgeway while the alleged surveillance was being conducted.

36. Ocampo testified that he forgot to activate his body-worn camera.

37. Ocampo testified that it took 20 to 25 minutes from when he dropped off Morado in the alley behind 836 N. Ridgeway until he and Morado detained and ultimately arrested Antonio.

6

38. Despite the fact that both officers were equipped with body-worn cameras, neither officer activated his body-worn camera during the alleged surveillance.

39. Despite the fact that both officers testified they observed Antonio engage in hand-to-hand drug transactions, there is no video evidence of any transactions, or any criminal conduct by Antonio.

40. On April 1, 2024, after a bench trial, Cook County Circuit Court Judge Thomas J. Byrne found Antonio Not Guilty on all charges.

**COUNT I – FEDERAL CLAIM**
**FALSE ARREST**
**DEFENDANTS MORADO and OCAMPO**

41. Each paragraph of this Complaint is incorporated as if restated fully herein.

42. Defendants caused Antonio to be arrested without probable cause to believe he had committed any crime or offense, in violation of the Fourth Amendment to the U.S. Constitution.

43. As a proximate result of Defendants' misconduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

**COUNT II – FEDERAL CLAIM**
**UNLAWFUL DETENTION**
**DEFENDANTS MORADO and OCAMPO**

44. Each paragraph of this Complaint is incorporated as if restated fully herein.

45. Defendants caused Antonio to be detained without reasonable suspicion to believe he had committed any crime or offense, in violation of the Fourth Amendment to the U.S. Constitution.

46. As a proximate result of Defendants' misconduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

7

## COUNT III – FEDERAL CLAIM
### MALICIOUS PROSECUTION
### DEFENDANTS MORADO and OCAMPO

47.    Each paragraph of this Complaint is incorporated as if restated fully herein.

48.    Defendants initiated and continued criminal charges against Antonio without probable cause and with malice, in violation of the Fourth Amendment to the U.S. Constitution.

49.    Defendants accused Antonio of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Antonio without any probable cause for doing so, in violation of his rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution.

50.    The criminal case against Antonio terminated on April 1, 2024, in a manner favorable to Antonio and indicative of his innocence.

51.    As a proximate result of Defendants' misconduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

### COUNT IV – STATE CLAIM
### FALSE ARREST/WRONGFUL IMPRISONMENT
### DEFENDANTS MORADO, OCAMPO, and CITY OF CHICAGO

52.    Each paragraph of this Complaint is incorporated as if restated fully herein.

53.    Defendants MORADO and OCAMPO, and CITY OF CHICAGO, by and through its agents, Defendants MORADO, and OCAMPO, restrained and/or arrested Antonio without having reasonable grounds to believe he had committed any crime or offense.

54.    The criminal case against Antonio terminated on April 1, 2024, in a manner favorable to Antonio and indicative of his innocence.

55.    As a proximate result of Defendants' misconduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

## COUNT V – STATE CLAIM
## MALICIOUS PROSECUTION
## DEFENDANTS MORADO, OCAMPO and CITY OF CHICAGO

56. Each paragraph of this Complaint is incorporated as if restated fully herein.

57. Defendants MORADO, OCAMPO, and CITY OF CHICAGO, by and through its agents, Defendants MORADO, and OCAMPO, initiated and continued criminal charges against Antonio without probable cause and with malice.

58. The criminal case against Antonio terminated on April 1, 2024, in a manner favorable to Antonio and indicative of his innocence.

59. As a proximate result of Defendants' misconduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation, and emotional pain and suffering.

## COUNT VI – STATE CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## DEFENDANTS MORADO, OCAMPO, and CITY OF CHICAGO

60. Each paragraph of this Complaint is incorporated as if restated fully herein.

61. Defendants' conduct, as described herein, was extreme and outrageous, defendants intended to cause or recklessly or consciously disregarded the probability of causing, severe emotional distress, and Antonio suffered severe emotional distress as a proximate result of Defendants' actions.

62. As a direct and proximate result of Defendants' conduct, Antonio suffered loss of liberty, fear, mental anguish, humiliation, and emotional pain and suffering, and will continue to suffer many of these conditions in the future.

## COUNT VII – STATE CLAIM
## INDEMNIFICATION
## DEFENDANT CITY OF CHICAGO

63. Each paragraph of this Complaint is incorporated as if restated fully herein.

64. At all relevant times, CITY OF CHICAGO was the employer of Defendants MORADO and OCAMPO.

65. Defendants MORADO and OCAMPO committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY OF CHICAGO.

66. Illinois law provides that government entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

67. Should Defendants MORADO and OCAMPO be found liable on one or more of the claims set forth above, Plaintiff ANTONIO MCKINLEY demands, pursuant to Illinois law, that their employer, Defendant CITY OF CHICAGO, be found liable for any judgment plaintiff obtains against Defendants MORADO and OCAMPO, as well as attorney's fees and costs awarded, and for any additional relief this Court deems just and proper.

## PRAYER FOR RELIEF (ALL COUNTS)

For the foregoing reasons, the Plaintiff ANTONIO MCKINLEY, prays for judgment against Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney fees and costs, and for any additional relief this Court deems just and proper.

## JURY DEMAND

The Plaintiff, ANTONIO MCKINLEY, requests a trial by jury.

10

**DATED:** April 30, 2024

Respectfully submitted,

ANTONIO MCKINLEY

/s/ Jordan Marsh

*Attorney for the Plaintiff*

**LAW OFFICE OF JORDAN MARSH LLC**
5 Revere drive Suite 200
Northbrook, IL 60062
(224) 220-9000

11